UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 19-10467-RGS

UNITED STATES OF AMERICA

v.

PATRICK J. QUINN

MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR
JUDGMENT OF ACQUITTAL OR, ALTERNATIVELY, A NEW TRIAL

October 24, 2022

STEARNS, D.J.

Following a six-day trial, the jury found defendant Patrick J. Quinn

guilty of two felony counts of theft of government money in violation 18

U.S.C. § 641, and two felony counts of making false statements in violation of

18 U.S.C. § 1101(a)(2), all in connection with a scheme to steal veterans and

social security disability benefits to which he was not entitled.  Quinn now

moves for a judgment of acquittal or, in the alternative, for a new trial.

The governing standards are familiar.  Rule 29 judgments of acquittal

are granted sparingly. In weighing a motion for acquittal, "we scrutinize the

evidence in the light most compatible with the verdict, resolve all credibility

disputes in the verdict's favor, and then reach a judgment about whether a

rational jury could find guilt beyond a reasonable doubt."  *United States v.*

*Olbres*, 61 F.3d 967, 970 (1st Cir. 1995), quoting *United States v. Taylor*, 54 F.3d 967, 974 (1st Cir. 1995). "Under the viewpoint principle, a jury charged with determining an accused's guilt or innocence is entitled to consider the evidence as a seamless whole. 'The sum of an evidentiary presentation may well be greater than its constituent parts.'" *Olbres,* 61 F.3d at 974, quoting *United States v. Ortiz*, 966 F.2d 707, 711 (1st Cir. 1992).

A district court's power to order a new trial pursuant to Rule 33 is greater than its power to grant a motion for acquittal. *United States v. Rothrock*, 806 F.2d 318, 321 (1st Cir. 1986). The court may consider both the weight of the evidence and the credibility of the witnesses in deciding a motion for a new trial. *Id.* A new trial will be granted "if the interest of justice so requires." Fed. R. Crim. P. 33(a). However, "[t]he remedy of a new trial is rarely used; it is warranted 'only where there would be a miscarriage of justice' or 'where the evidence preponderates heavily against the verdict.'" *United States v. Andrade*, 94 F.3d 9, 14 (1st Cir. 1996), quoting *United States v. Indelicato*, 611 F.2d 376, 386 (1st Cir. 1979).

Quinn makes two principal arguments in support of his new trial motion. First, he contends that the instructions the jury received on the applicable Veterans Affairs (VA) regulations were erroneous in that they

2

failed to mirror the exact language used to define marginal employment.
"Here, the Court's instructions were erroneous because the instruction
regarding substantial gainful activity did not include the language [or its
equivalent] from the VA regulation," that "Marginal employment shall not
be considered substantial gainful employment."  Def.'s Mem. at 12 [Dkt #
131].  Second, Quinn contends that the court erred in admitting unduly
prejudicial corporate records showing his ownership of the Quinn Insurance
Group.

1. Jury instructions on gainful activity

A trial judge is under no obligation to give a jury instruction in the
precise words requested by a defendant so long as the instruction given fairly
and accurately conveys the substance of the applicable law.  *United States v.
Morris,* 700 F.2d 427, 433 (1st Cir. 1983); *see also United States v. Simon*,
12 F.4th 1, 50 (1st Cir. 2021) ("[W]e will not second-guess the trial court's
rejection of a proposed instruction unless the proposed instruction is itself
substantively correct, was not covered (at least in substance) in the charge
as given, and touched upon a salient point (such that the refusal so
to instruct seriously undercut the proponent's ability to mount a particular
claim or defense and caused substantial prejudice.").

3

Here, the court explained the term "substantial gainful activity" as used in the Social Security (SSA) and VA regulations at issue as follows. [1]

> As you have heard, a disabled veteran is entitled to disability benefits both from the Department of Veterans Affairs and the Social Security Administration if, because of a service-connected injury, he is unable to secure or maintain substantial gainful employment. The Social Security Administration defines substantial work activity as work activity that involves doing significant physical or mental activities. It advises applicants that work activity may be substantial even if it is done on a part-time basis. Gainful has its ordinary meaning of remunerative or profitable.
>
> The definition used by the Department of Veterans Affairs is whether the veteran is unemployable in fact, which hinges on two components: economic and non-economic. The economic component of the test defines substantial gainful employment as the type of employment that nondisabled people undertake to earn their livelihood. The non-economic component asks whether the veteran has the ability to perform the type of activities required by the occupation at issue. Substantial means important and real and something more than merely incidental.
>
> Neither of these federal benefits programs considers an applicant's net worth, ownership interests, or investment income in making an eligibility determination.

The court is frankly at a loss in comprehending any error in substituting "merely incidental," for "marginal;" as for dictionary purposes the words are

---

[1] While it is not altogether clear from Quinn's Memorandum, his objection seems to run only to the court's explanation of gainful activity as it is used in the VA regulation; the court will, however, give him the benefit of the doubt and assume that he means both.

mostly interchangeable. *See* Shorter Oxford English Dictionary (1969) ("Incidental . . . Of a charge or expense: Such as is incurred apart from the primary disbursements"; "Marginal . . . Pertaining to an edge, border, or boundary"), although in an employment income context at issue here "incidental" comes closer to the intended meaning.

2. The admission of corporate records

The complaint regarding the admission of the corporate records of Quinn's insurance group is even more confounding.[2] As best I understand it, Quinn's argument appears to be not that the records were incomplete, rather that they were not complete enough in the sense that they did not dispel the possibility that the substantial sums being paid to Quinn "could have been payments to a shareholder or repayments of loans," instead of earned income. *See* Def.'s Mem. at 11 [Dkt # 131]. As the government points out, the records were relevant in that they showed the degree of control that Quinn exercised over the business and that he "was receiving a financial benefit from his management of the business and used the corporate

---

[2] *See Harrington v. United States*, 504 F.2d 1306 (1st Cir. 1974) ("[T]he admission and exclusion of evidence is primarily within the discretion of trial judge, and this determination will not be disturbed absent a showing of abuse of discretion.").

accounts to pay himself and pay for various expenses." Gov't Mem. at 15 [Dkt # 143]. To the extent Quinn was of the view that his own business records were misleading as to how much he was in fact being paid to manage and operate his insurance business, it was open to the defense to call an expert of its own to dispute the testimony of the government's witnesses.

3. Judgment of Acquittal

The motion for a judgment of acquittal rests on two grounds, a boilerplate objection to the sufficiency of the evidence as well as an assertion that the regulations defining theft of government money from the SSA and the VA are unconstitutionally vague. With respect to the first ground, the credible evidence on which the jury was entitled to base their verdict was overwhelming. Aside from employees who testified to Quinn's involvement in the day-to-day operations of Quinn Group Insurance – Lynne Sullivan, who worked for a decade as a direct report to Quinn and saw him on a near daily basis, and John Avila who was supervised by Quinn on a "pretty much daily basis" for four years while he placed commercial insurance for the Group – the jury need have looked no further than the personal resume Quinn presented to the Town of Arlington when seeking appointment to a Town board. In the resume, Quinn explained the far-reaching role he played

as President of the Quinn Group, including daily oversight of fifteen employees and a sales force, providing client assistance in complex insurance matters, and assembling the Quinn Group's financial and tax reports and employee benefit packages.

The second ground for a judgment of acquittal raised by Quinn is that the regulations promulgated by the SSA and the VA "are unconstitutionally vague because they fail[ed] to provide him notice of prohibited conduct." Def.'s Mem. at 10 [Dkt # 131].  This fails at the gate.  Quinn was prosecuted for violating federal criminal statutes, specifically section 641 of Title 18 of the United States Code (theft of money belonging to the United States – Counts One and Two) and  knowingly making false and material statements to the VA and the SSA in violation of section 1101(a)(2) of Title 18 of the United States Code – Counts Three and Four).  He was not prosecuted for regulatory violations.

ORDER

For the foregoing reasons, the motion for judgment of acquittal or, alternatively, for a new trial, is <u>DENIED</u>.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

8