UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CASE NO. 19-CR-10467-RGS

UNITED STATES OF AMERICA,

vs.

PATRICK QUINN,

    Defendant.
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files this Sentencing Memorandum. For the following reasons, the Government recommends a sentence at the low-end of the guidelines range to twenty-seven months. A sentence of home confinement, as requested by defense counsel, is inadequate to account for the Defendant's conduct in this case, which spanned years of his life and included lying to multiple federal agencies for his own financial benefit.

More specifically, a sentence of twenty-seven months would reflect the nature and seriousness of the Defendant's offense and provide just punishment for that offense, while taking into account the history and characteristics of the Defendant. *See* 18 U.S.C. § 3553(a). In this case, the Defendant stole over $300,000 from two different federal agencies over a period of years. He continually and consistently lied to the federal government for his own gain. He proceeded to trial where his former employees and his ex-wife took the stand and lied on his behalf.[1] Aside

---

[1] In the Sentencing Memorandum filed by defense counsel, it painstakingly references the testimony of Erin Gaffney, Johanna Moloney, and Amy Quinn. *See* Defendant's Sentencing Memorandum, at 7-8 [DE 151]. However, clearly the jury did not credit this testimony in reaching its verdict. As the Court recalls, Erin Gaffney and Johanna Moloney's testimony was at odds with their earlier grand jury testimony, which took place before Amy Quinn hired and paid for an attorney to represent both women at trial.

from paying back the outstanding amount that the Defendant stole from the Social Security Administration ("SSA"), the Defendant has otherwise failed to take any responsibility for his actions, and he should be punished accordingly. While the Government recognizes that the Defendant honorably served this country and suffers from numerous health ailments, he still needs to be held accountable for his choices. Furthermore, while the Government is certainly sympathetic to the Defendant's family situation and the circumstances regarding his son, which is a focus of the Sentencing Memorandum and the Defendant's request for a downward variance, the Defendant committed these crimes knowing that he had a child who relied upon him and that the consequences of lying to, and stealing from, the federal government could result in incarceration.[2] For these reasons, the Government believes that a sentence at the low-end of the guidelines is appropriate.

Turning first to the nature and circumstances of the offense, the Defendant here defrauded both the Department of Veteran Affairs ("VA") and the SSA for years—from at least 2012-2019. The Defendant represented time and time again that he was so disabled he could not work all while running a prosperous insurance agency. He took money from the federal government that was intended to help people so disabled that they are unable to work—a category that the Defendant simply did not fall into.

As is outlined in more detail in the Presentence Investigation Report ("PSI"), in 2005, the Defendant applied for disability benefits and Individual Unemployability ("IU") benefits from the VA. PSI, at ¶ 7. On the application for IU benefits, the Defendant wrote that he was totally disabled and unable to work due to Post-Traumatic Stress Disorder ("PTSD"). *Id.* As the

---

[2] In fact, the Defendant sought benefits on behalf of his son from SSA as outlined in the Presentence Investigation Report ("PSI").

Government stated at trial, there is no dispute that the Defendant does, in fact, suffer from PTSD. However, after the trial, there is also no dispute that the Defendant's PTSD did not preclude him from working as he managed and operated a prosperous insurance company bearing his name—Quinn Group Insurance Agency—for years. On the application for IU benefits, the Defendant indicated that his last job had been with Insurance Management Consultants, Inc. and had ended four days earlier because he was unable to deal with people. *Id.* The letter in support of this application was signed and sent by the Defendant's sister. *Id.* Evidence presented at the trial showed that the Defendant continued to be the President, Treasurer, and Secretary, among other things, of Insurance Management Consultants until 2007—years after he applied for IU benefits claiming he had been fired from Insurance Management Consultants. *Id.* Based upon the Defendant's misrepresentations to the VA, his application for IU benefits was approved and he began receiving monthly benefits in April 2005. *Id.*

In connection with the Defendant's receipt of IU benefits, in 2007, the Defendant received an Employment Questionnaire, which specifically asked whether the Defendant had been employed during the past twelve months. *Id.* at ¶ 8. The Defendant indicated "no" and certified that all the information that he provided on the form was true and correct and that his service-connected disability had not improved and precluded him from engaging in employment. *Id.* The Defendant completed the same form in 2008, 2015, and 2016. *Id.* at ¶¶ 8-9. Each time, the Defendant certified that he was not working and, based upon this information, he continued to receive IU benefits. *Id.* at ¶ 9. However, the Defendant, who ran a successful business knew that these statements were false. He made these misrepresentations in order to continue to collect

benefits from the VA beyond what he was entitled to. In other words, the Defendant continued to make these misrepresentations out of greed.

The Defendant engaged in similar conduct with regard to the SSA. As is outlined in more detail in the PSI, the Defendant applied for Disability Insurance Benefits ("DIB") with the SSA in November 2006. *Id.* at 10. He stated that he had been unable to work since 2004 due to his disability. *Id.* Again, as part of the Defendant's application he agreed to notify SSA if he returned to work. *Id.* He was approved and began to receive these benefits in March 2005. *Id.* The following year, he received additional Children's Insurance benefits in connection with his minor child based upon the same assertion—that he was so disabled he was unable to work. *Id.* at ¶ 11. In 2018, the Defendant completed a "Continuing Disability Review Report" that was submitted to the SSA where he specifically stated that he had not worked since 2006 and that he stayed away from people and was always by himself, among other things. *Id.* at ¶ 12.

However, what was clear at trial was that the Defendant had been working during this time period. The Defendant had been running his own insurance business—he went to the office, he communicated with and managed clients, he acquired other insurance businesses, he kept up to date on his insurance license, and he hired new employees, among many other tasks. The Defendant's own resume was introduced at trial where he stated in his own words the extensive work that he had done for Quinn Group Insurance Agency from 2000 to at least August 2015 (the date when he submitted his resume to the Town of Arlington in connection with a board position). *See* Trial Exhibit 50E. The Defendant's resume indicated that he served as president of the business and that he was: "responsible for day to day operations; prepare[d] financial and tax reports, coordinated employee benefits packages, assist[ed] clients with complex insurance issues;

4

supervised staff of fifteen employees; managed sales staff," and "grew agency 1200% over thirteen year period." *Id.* The Defendant's own resume demonstrated that everything he had represented to the SSA and the VA about his work history in order to receive benefits was not true.

The Defendant's conduct in this case was serious and it was motivated by greed. While the Defendant did not submit a financial statement to USPO, the PSI highlights that the Defendant's business, Quinn Group Insurance, was sold in May 2021 for $6,500,000. PSI, at ¶ 65. Additionally, the PSI highlights that the Defendant owns an office building located at 223 Mass Avenue, in Arlington, MA, where his business is located and where he lived for a period of time that is worth over a million dollars. *Id.* at ¶ 69. He also owned a home in Arlington, Massachusetts worth almost 2 million dollars and another home in Naples, Florida worth almost 4 million dollars. *Id.* The Defendant also owned a number of vehicles and motorcycles. *Id.* All the while, the Defendant was receiving thousands of dollars in benefits based on his assertion that he was not and could not work. Again, this conduct was not motivated by need, it was motivated by greed.

There is a need to punish the Defendant's conduct, which took advantage of two federal agencies that rely on their applicants to be truthful. The testimony at trial was that these agencies trust and rely upon the assertions of their applicants and that these agencies, through these programs, try to help people who are disabled and unable to find and maintain employment. The Defendant took advantage of that trust repeatedly for years. He needs to be held accountable for those choices. The cases in this district that the Defendant cites to in his Sentencing Memorandum in support of a downward variance at pages 16-17, such as *United States v. Moore*, Case No. 20-CR-30007-RGS, *United States v. Hersey*, Case No. 15-CR-10336-LTS, *United States v. Progin*,

Case No. 18-CR-40009-TSH,[3] *United States v. Bunell*, Case No. 17-CR-40048-TSH, *United States v. Murphy*, Case No. 14-CR-10119-PBS, *United States v. Camara*, Case No. 19-CR-10442-IT, and *United States v. Allen*, Case No. 12-CR-30052-MAP, are cases where the defendants pled guilty, often waiving indictment, and accepted responsibility for their actions. That is not this case. The Defendant here still refuses to take responsibility for his actions. Accordingly, those cases are inapposite for comparison to the facts and circumstances of this case and this Defendant.

For all of these reasons, the Government respectfully requests that the Court impose a sentence of twenty-seven months, which represents the low-end of the guidelines range.

Respectfully submitted,

RACHAEL S. ROLLINS
UNITED STATES ATTORNEY

By: */s/ J. Mackenzie Duane*
J. Mackenzie Duane
Assistant United States Attorney

---

[3] The case was incorrectly listed as 18-400049-TSH in Defendant's Sentencing Memorandum at page 16. However, the correct case number is 18-CR-40009.

**<u>CERTIFICATE OF SERVICE</u>**

**I HEREBY CERTIFY** that on November 4, 2022 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ J. Mackenzie Duane*
J. Mackenzie Duane
Assistant United States Attorney
